Erwin E. **STEINBERG** and Jack Tyrer, d/b/a Gravois Associates, Respondents,

v.

Alfred J. **FLEISCHER, et al.,**
Appellants.

No. 47597.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 11, 1986.

Leritz, Reinert & Duree, P.C., Bernard A. Reinert, Mark A. Helfers, St. Louis, for appellants.

Blumenfeld, Sandweiss, Marx, Tureen, Ponfil & Kaskowitz, Gary A. Growe, Clayton, for respondents.

CRANDALL, Presiding Judge.

Plaintiffs, Erwin E. Steinberg and Jack Tyrer, d/b/a Gravois Associates, brought, an action against defendants, Alfred J. Fleischer, et al., d/b/a Fleisher-Seeger Construction Co., for breach of a construction contract. Defendants counterclaimed based on theories of breach of contract, quantum meruit, negligence and fraud. Defendants appeal from the judgment, in a jury-tried case, in favor of plaintiffs on their claim for damages in the amount of $137,000 and in favor of plaintiffs on defendants' counterclaim. We affirm in part and reverse and remand in part.

The evidence established that, on December 7, 1977, plaintiffs entered into a contract with defendants to construct a supermarket. The contract called for completion within nine months, which was later extended to ten months. The construction contract consisted of a standard form prepared by the American Institute of Architects (AIA). The parties agreed to modify the form contract by deleting (1) the phrase excusing the date of completion because of "adverse weather conditions" [1] and (2) the section providing for an equitable adjustment in the contract sum if "concealed

---

1. 8.3.1 If the Contractor is delayed at any time in the progress of the Work by any act or neglect of the Owner or by the Architect, or by any employee of either, or by any separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in transportation, [adverse weather conditions not reasonably anticipatable,] unavoidable casualties, or any causes beyond the Contractor's control, or by delay authorized by the Owner pending arbitration, or by any other cause which the Architect determines may justify the delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

conditions" below the surface of the ground were encountered during construction.[2] Defendants commenced site preparation work immediately, but then stopped all work until late March of 1978 due to severe winter weather. In April, a subcontractor hit rock while digging a new sewer line. The rock had to be blasted. In June, excavation of the building site began, but then another subcontractor encountered difficulties compacting the soil. A myriad of other problems surfaced. In December 1978, work resumed and the building was substantially completed on October 10, 1979.

In their first point, defendants contend that the trial court erred in granting partial summary judgment in favor of plaintiffs on the issue of defendants' liability for breach of contract.

■ In reviewing the trial court's ruling on a motion for summary judgment the appellate court must scrutinize the record in the light most favorable to the party against whom judgment was rendered, resolving all doubts in favor of that party. *First Nat. Bank of St. Charles v. Chemical Products, Inc.*, 637 S.W.2d 373, 375 (Mo.App.1982). When a party is confronted with a motion for summary judgment supported by affidavits, he must set forth specific facts showing that there is a genuine issue of fact for trial. *Clayton Brokerage Co. v. Raleigh*, 679 S.W.2d 376, 379 (Mo.App.1984).

In their motion for partial summary judgment, plaintiffs alleged that defendants failed to comply with Article 8.3.2[3] of the General Conditions of the contract; and therefore any excuse defendants might have had for delay beyond the date specified for completion in the contract was waived. In support thereof, plaintiffs submitted the architect's affidavit and one defendant's deposition testimony which acknowledged that no such requests had been made. Defendants, in their response to the motion for summary judgment, urged that written requests should not be required when the delay was caused solely by the other party. Additionally, in their supplemental response to summary judgment and in their motion for reconsideration, defendants countered that progress letters had been written to plaintiff-owner, not plaintiff-architect. They claimed that these letters were effective as requests for extensions of time and that the owner's failure to respond to these letters was tantamount to acquiescense to the delays. Defendants also argued that the contract was unenforceable because, based on deposition testimony, plaintiffs had fraudulently induced them to enter the contract by failing to disclose either the existing subsurface conditions at the building site or the architect's ownership interest in the project.

The meaning of Article 8.3.2 is plain on its face. In *Herbert & Brooner Construction Co. v. Golden*, 499 S.W.2d 541, 549 (Mo.App.1973), the court interpreted the same contractual provision, stating:

> [I]t is incumbent upon the contractor, in order to avail of an extension of time ... to lay claim therefor at the time and within the time and manner stipulated. Otherwise no such extension of time is available to him on the grounds of waiver ... in the very face of a provision

---

**2.** 12.2.1 Should concealed conditions encountered in the performance of the Work below the surface of the ground or should concealed or unknown conditions in an existing structure be at variance with the conditions indicated by the Contract Documents, or should unknown physical conditions below the surface of the ground or should concealed or unknown conditions in an existing structure of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Contract, be encountered, the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within twenty days after the first observance of the condition.

**3.** 8.3.2 Any claim for extension of time shall be made in writing to the Architect not more than twenty days after the commencement of the delay; otherwise it shall be waived. In the case of a continuing delay only one claim is necessary. The Contractor shall provide an estimate of the probable effect of such delay on the progress of the Work.

stiplating a precise time.... (Citations omitted.)

The contract in this case, although a "standard" contract, was freely negotiated. The parties could have included any reasonable terms dealing with construction delays that they thought appropriate. Having agreed on the terms, they ordinarily would be bound by them. The question here is whether defendants have raised any factual issues which would preclude strict enforcement of Article 8.3.2 of the contract. In considering that question, we look to the record at the time the motion for summary judgment was submitted.

■ Defendants argue, *inter alia*, that plaintiffs fraudulently misrepresented the subsoil conditions at the time of entering into the contract. If, *in fact*, there was fraud in the inducement there could be no legally enforceable contract. Fraud avoids all contracts, where it can be shown that, but for the fraud, the defrauded party would not have entered into the contract. *Taggart v. School Dist. No. 52, Carroll County*, 339 Mo. 223, 96 S.W.2d 335, 337 (Mo.1936). In the present case, it was for the jury to decide whether representations were made, whether the representations were false, and whether defendants were entitled to rely on the representations. *See, e.g., Essex v. Getty Oil Co.*, 661 S.W.2d 544, 550–551 (Mo.App.1983). Plaintiffs' fraudulent inducement was therefore a genuine issue of fact for trial.

■ If the facts establish that plaintiffs fraudulently induced defendants to contract, the next question is whether defendants' actions after discovering the fraud constituted a waiver. Waiver can be found in either the words or actions of defendants. To be construed as an implied waiver, defendants' acts must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of their conduct is possible. *Meyer v. Brown*, 312 S.W.2d 158, 162 (Mo.App.1958).

The evidence submitted at the time of the motion for summary judgment established that defendants did not walk off the job; they remained and substantially completed the project. If defendants, with full knowledge of the material facts, chose to honor the contract they may have waived the fraud. This would depend on many factors, including but not limited to: whether substantial work had been done on the project prior to the discovery of the subsurface conditions; whether the problem was severe; whether serious financial obligations had been incurred by defendants; and whether the facts were only discovered piecemeal as the work progressed. These questions are questions of fact that cannot be resolved as a matter of law based upon the record in this case. *See* 13 A.L.R.2d 807, 846–854 (1950).

There is another cogent reason for not strictly enforcing the extension of time provision of the contract. The architect, although he was hired by the owner and served as his agent, occupied a quasi-judicial position. As such, he was contractually bound by Article 2.2.7 of the General Conditions to be "the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder." In that capacity he was obligated under Article 2.2.10 to "not show partiality to either" party. Here the architect is a co-owner and a party plaintiff. Defendants allege that he was an *undisclosed* co-owner. If that is factually correct, then the contract provision providing that extensions of time be requested from the architect is a nullity. Clearly, it would be unjust to require plaintiffs to abide by such a contractual provision when secretly the "impartial judge" has a direct financial interest in the outcome of the project.

■ Defendants, in their response to plaintiffs' motion for summary judgment, set forth sufficient facts demonstrating that there were genuine issues of fact for trial. The jury should have been permitted to decide whether or not defendants actually breached the contract by not completing the project after the date specified in the contract. We therefore hold that the trial court erred in granting summary judgment

in favor of plaintiffs on the issue of liability.

Defendants raise fourteen other points on appeal. We have carefully reviewed the record and have determined that an extended opinion on Points II, XII and XIV would have no precedential value. Further, no error of law appears. Those points are therefore denied in accordance with Rule 84.16(b).

■ Defendants' Points III, IV and V have no citation to authority. The points raised are not ones of first impression nor are they just matters of logic or of language construction. Citation to authority is appropriate. We therefore consider the points abandoned. *Wright v. Martin*, 674 S.W.2d 238, 242 (Mo.App.1984); *Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 396 (Mo.App.1984).

In view of our holding on Point I, it is unnecessary to consider Points VI, VIII, IX, X and XV which relate to the judgment on plaintiffs' claim. The parties should consider the points raised in the briefs on the re-trial of plaintiffs' claim.

We turn now to the remaining points. In Point VII defendants allege error in the trial court's refusal to admit defendants' Exhibit No. 89, which delineated the attorney's fees expended to defend subcontractors' lawsuits against them. They contend that these fees were incurred as a result of plaintiffs' misrepresentation of the soil conditions.

■ Although it is permissible to recover reasonable attorney's fees incurred as a result of collateral litigation, "the wronged party must show that the litigation was the natural and proximate result of the wrong or breach of duty by the other party...." *Forsythe v. Starnes*, 554 S.W.2d 100, 111 (Mo.App.1977). The record is devoid of evidence to substantiate that any of the subcontractors' claims arose as a result of plaintiffs' alleged misrepresentation about soil conditions. There was insufficient foundation as to the causal connection between plaintiffs' alleged failure to disclose soil conditions and defendants'

attorney's fees. The trial court did not abuse its discretion in refusing to admit Exhibit No. 89. Defendants' seventh point is denied.

Defendants argue in their eleventh point that the trial court erred in directing a verdict in favor of plaintiffs on defendants' counterclaim in quantum meruit, Count IV, which was pleaded in addition to their counterclaims in contract, Count I, and in fraud, Count II. At trial and on appeal, plaintiffs contend that defendants' theories of breach of contract and of quantum meruit were inconsistent and mutually exclusive. Defendants, however, assert that the trial court should have submitted both theories of recovery to the jury, in the alternative.

■ It is permissible to plead inconsistent theories in the alternative. Rule 55.10 explicitly provides that "[a] party may also state as many separate claims or defenses as he has regardless of consistency...." Rule 55.10, however, is merely a rule of pleading and does not address the question of whether inconsistent theories of recovery can be submitted to the jury.

■ It is clear that quantum meruit and contract theories of recovery can be pursued simultaneously when the quantum meruit claim is solely for "extra work." In a building contract, extra work is work which is not within the contemplation of the contracting parties and is not controlled by the contract. *American Drilling Service Co. v. City of Springfield*, 614 S.W.2d 266, 274 (Mo.App.1981); *McDowell v. Schuette*, 610 S.W.2d 29, 37 (Mo.App.1980). Although Count IV of defendants' counterclaim may have sounded in quantum meruit for extra work, the pleading specifically asked for rescission of the contract and for damages. Seeking rescission of the contract expands prospective damages beyond the reasonable value of the extra work. Recovery in quantum meruit for extra work is outside of the existing contract and is not based upon rescission of that contract.

■ It is also clear that, if a party pursues one theory to judgment or if he in

effect settles the dispute, the rule of estoppel bars that same party from thereafter pursuing another and inconsistent theory of recovery based upon the same matrix of facts. *Timmons v. Bender*, 601 S.W.2d 688, 690 (Mo.App.1980).

With these principles as background, we turn to the issue of whether the defendants in the present action were entitled to submit their quantum meruit theory and their contract theory in the alternative or whether an election of remedies was required. *See generally* Comment, *Missouri Pleadings and Instructions Based on Inconsistent Theories*, 45 Mo.L.Rev. 727 (1980). In Count I of their counterclaim, defendants sued for breach of contract and asked for actual damages, thereby affirming the contract. In Count II, defendants sued for fraud and asked for actual and punitive damages, again affirming the contract. In Count IV, defendants claimed fraud and asked for quantum meruit damages, specifically seeking to rescind the contract.

In *Boyd v. Margolin*, 421 S.W.2d 761 (Mo.1967), there is dictum regarding quantum meruit and contract that "it *seems* that these theories of recovery are inconsistent and a party *may* be required to elect as to which he will submit to the jury." (Emphasis added.) *Id.* at 768. When the Supreme Court stated in *Boyd* that "[a] party cannot count upon a contract and recover upon a quantum meruit," *Id.*, it relied upon cases that limited recovery to the pleaded theory (contract) to the exclusion of any other theory which was not pleaded (quantum meruit). The Court stated that the cases relied upon were "applicable on their facts to the situation of where a plaintiff has 'chosen his route.'" *Id.* *Boyd* therefore would not be controlling where both contract and quantum meruit have been pleaded. In the present case, defendants pleaded both theories of recovery. They had not yet "chosen their route," so as to make the *Boyd* decision determinative on the issue of whether both theories should have been submitted to the jury.

In *Kaiser Aluminum & Chemical Sales, Inc. v. Lingle Refrigeration Co.*, 350 S.W.2d 128 (Mo.App.1961), the court held that " 'a count based on an expressed [sic] contract may be joined with a count based on quantum meruit.' ... *And* ... *plaintiff cannot be compelled to elect on which count he will go to the jury.*" *Id.* at 132. In the present case, defendants pleaded both theories of recovery in the alternative. Under *Kaiser*, defendants were therefore entitled to submit both their quantum meruit theory and their contract theory to the jury.

Additionally, under *Boyd*, election of remedies must be pleaded or be raised by a motion to strike or by a motion to elect at the close of the evidence. *Boyd*, 421 S.W.2d at 768–769. If it is not so raised, the objection is deemed waived. *Id.* A motion for directed verdict does not properly reach the issue of election of remedies. In the instant case, the trial court erroneously granted a motion for directed verdict on defendants' quantum meruit claim. The issue of election of remedies was never properly raised in either plaintiffs' pleadings or in a motion to elect. Plaintiffs therefore waived their objection. Thus, even if our analysis were limited to the *Boyd* decision, it was error to dismiss defendants' quantum meruit claim.

Plaintiffs argue that the evidence of the reasonable value of defendants' services was insufficient. In a quantum meruit claim, contract evidence may be introduced as prima facie evidence of reasonable value. *General Aggregate Corp. v. LaBrayere*, 666 S.W.2d 901, 909 (Mo. App.1984). There was ample evidence presented at trial as to the additional expenses which defendants incurred as a result of the misrepresented soil conditions. Defendants made a submissible case on their quantum meruit claim. The trial court erred in dismissing Count IV of defendants' counterclaim.

In their thirteenth point, defendants assert that the trial court erred in refusing to give Instruction F, a fraudulent misrepresentation instruction, which posited defendants' actual reliance on plaintiffs' representations as to the soil conditions and as to ownership of the construction project. In

its place the court gave Instruction No. 15, a similar instruction, with the exception that defendants' reliance on plaintiffs' representations was required to meet the standard of ordinary care. Defendants' argument is that ordinary care was not required in order to make their reliance proper, because they were in a fiduciary relationship with plaintiffs. They argue that the term "ordinary care" should be deleted from the instruction.

We find no evidence in the record that defendants stood in a confidential or fiduciary relationship with plaintiffs. Both parties were experienced businessmen who contracted at arms length for the construction of a commercial building. There is no evidence that the parties were partners in this project. The instruction that was given was proper. Defendants' thirteenth point is denied.

The judgment in favor of plaintiffs and against defendants on plaintiffs' claim is reversed and the case is remanded for a new trial. The judgment in favor of plaintiffs on Count IV of defendants' counterclaim is reversed and remanded for new trial only on Count IV. In all other respects the judgment in favor of plaintiffs on defendants' counterclaim is affirmed.

KELLY and PUDLOWSKI, JJ., concur.